IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Amanda Acevedo, *on behalf of* *Nilo Richard Acevedo*, <br><br>  Plaintiff, <br><br> v. <br><br> Carolyn W. Colvin, Acting Commissioner of Social Security,[1] <br><br> Defendant. | C/A No. 0:12-2137-TMC-PJG <br><br><br><br> **REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC.  The plaintiff, Amanda Acevedo, on behalf of the deceased claimant, Nilo Richard Acevedo ("Acevedo"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") prior to April 13, 2011.  Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further proceedings.

**ADMINISTRATIVE PROCEEDINGS**

In October 2009, Acevedo applied for DIB, alleging disability beginning August 1, 2009. Acevedo's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on April 13, 2011, at which Acevedo, who was represented by Paul T. McChesney, Esquire, appeared and testified.  After

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



hearing testimony from a vocational expert, the ALJ issued a decision on May 25, 2011 finding that Acevedo was not disabled prior to April 13, 2011, but became disabled on that date. (Tr. 32-44.)

Acevedo was forty-eight years old at the time of his alleged disability onset date. (Tr . 147.) He completed a general equivalency diploma ("GED") and has past relevant work experience as a robotic specialist, a warehouse manager, a machinist, and a maintenance person. (Tr. 152.) In his application, Acevedo alleged disability since August 1, 2009 due to a sciatic nerve, ruptured disc, hepatitis C, and problems with his right hand. (Tr. 151.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).
    * * *
3. Since the alleged onset date of disability, August 1, 2009, the claimant has had the following severe impairments: degenerative disc disease, lumbar spine, with radiculopathy and chronic low back pain; degenerative joint disease, right hand, with loss of extension in the right thumb and loss of range of motion in right wrist; hypertension; hepatitis C; status-post rotator cuff repair, left shoulder, with pain; status-post ulnar nerve surgery, left elbow; depression; and anxiety (20 CFR 404.1520(c)).
    * * *
4. Since the alleged onset date of disability, August 1, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).
    * * *
5. . . . [S]ince August 1, 2009, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, I find the claimant is right hand dominant and is able to: lift up to ten pounds occasionally; lift or carry less than 10 lbs frequently [e.g., file folders, ledgers, small tools]. I find he can stand or walk for two hours out of an eight-hour workday and he can sit for six hours out of an eight-hour workday. He can operate push/pull controls [use of upper extremities] occasional right, frequent left, with occasional overhead push/pull bilaterally; operate foot controls [lower extremities], frequent bilaterally; never climb ladders, ropes,



> or scaffolds; occasionally climb ramps or stairs; frequently balance; occasionally stoop, kneel, crawl; never crouch; overhead reach, occasionally bilaterally; handling objects [gross manipulation] frequent left, occasional right; fingering [fine manipulation]—items no smaller than paper clip—frequent left, occasional right; avoid even moderate exposure to extreme cold, excessive vibration, hazards [e.g., use of moving machinery, exposure to unprotected heights.]  Further, I find the claimant is limited to a low stress job, defined as requiring only occasional decision-making with no fast-paced production work or fast-pace work.  He is also limited to work involving the performance of simple, routine, and repetitive tasks and to only occasional interaction with the public.
>
> \* \* \*
>
> 6. Since August 1, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).
>
> \* \* \*
>
> 7. Prior to the established disability onset date, the claimant was a younger individual age 45-49.  Applying the age categories non-mechanically, and considering the additional adversities in this case, on April 13, 2011, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563).
>
> \* \* \*
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Prior to April 13, 2011, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.  Beginning on April 13, 2011, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Prior to April 13, 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> \* \* \*
>
> 11. Beginning on April 13, 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).



> 12. The claimant was not disabled prior to April 13, 2011, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

(Tr. 34-44.)  Acevedo submitted additional evidence to the Appeals Council, which denied his request for review on June 1, 2012, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-5.)  This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

> (1) whether the claimant is engaged in substantial gainful activity;
>
> (2) whether the claimant has a "severe" impairment;
>
> (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
> (4) whether the claimant can perform his past relevant work; and
>
> (5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

The plaintiff raises the following issues for this judicial review:

Issue I  Improper reliance on vocational expert testimony. A conflict exists between the VE's testimony and the DOT[.] Regulations require that when such a conflict exists, the ALJ must seek clarification. Where an adverse decision relies on a vocational opinion, and where that vocational opinion is inconsistent with the DOT, must the case be remanded in order to reconcile the testimony?

Issue II  Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight. The ALJ improperly gave little weight to portions of Dr. Godenick's opinions which supported a finding of disability. Where the ALJ improperly disregards the opinions of a treating physician, can his decision be supported by substantial evidence?

Issue III  Opinion evidence. The ALJ is required to evaluate all relevant medical evidence, including opinions from "other" medical sources. Here, the ALJ failed to properly evaluate the opinion of treating source, Debbie Milling, LMSW. This opinion supports a finding of disability. Where the ALJ improperly discounts a medical opinion, can his decision be supported by substantial evidence?

Issue IV  Credibility. In assessing a claimant's credibility the ALJ's decision must contain specific reasons for his finding, supported by the evidence in the case record. When the ALJ fails to provide specific reasons for his credibility determination, can his decision be based on substantial evidence?

(Pl.'s Br., ECF No. 12.)

## DISCUSSION

A.     **Vocational Expert**

The plaintiff contends that there is a patent inconsistency between the testimony provided by the vocational expert and the occupational information in Dictionary of Occupational Titles ("DOT") and Selected Characteristics of Occupations and that the ALJ erred in failing to resolve this inconsistency as required by SSR 00-4p.  Specifically, the plaintiff argues that the ALJ asked the vocational expert if his testimony was "consistent with the terms and descriptions contained in the Dictionary of Occupational Titles" and the vocational expert responded that it was when in fact an inconsistency existed.  As the ALJ failed to obtain an explanation for this inconsistency, the plaintiff argues that the ALJ's opinion is unsupported or controlled by an error of law as the Commissioner has not met his burden to show that Acevedo can perform other work.  The Commissioner appears to dispute the existence of any inconsistency.

> SSR 00-04p provides in pertinent part:
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.  Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704.  The Ruling further provides that

> [r]easonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

> Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

Id.

The crux of the parties' diverging positions on this issue appears to be based on differing interpretations of the vocational expert's testimony. In this matter, the ALJ presented the vocational expert with a hypothetical that included exertional, environmental, and non-exertional limitations. For the purposes of this issue, the following relevant limitations were included:

> And the use of the upper extremities is as follows: on the right, it is occasional; on the left, it is frequent but let me point out something from that. The overhead is limited to occasional for both the left and the right. . . . [INAUDIBLE] to just gross manipulations is limited as follows: On the right to occasional and on the left to frequent. Gross finger and fine manipulation is limited as follows: On the left it is frequent. On the right it is occasional. This involves handling or manipulating items which are no smaller than the size of a paperclip.

(Tr. 75-76.) The vocational expert responded that an individual with those limitations could not perform Acevedo's past relevant work, but stated that at the unskilled sedentary level, he believed that "there would be some assembler jobs that he could perform, DOT 739-684-094", "some inspecting jobs, DOT 726-684-050", and "some machine operator jobs, 690-685-194." (Tr. 77.) The vocational expert provided the number of each of those jobs in the upstate area and nationally. The ALJ then asked the vocational expert to add to the hypothetical that the individual is right-hand

PJG

dominant, and the vocational expert responded that his response would not change as he had factored that into his first response. The ALJ then further limited the individual's work pace, and asked if that would change the vocational expert's response. The vocational expert responded, "I believe that those jobs would still exist, Your Honor. I had initially reduced the numbers I indicated by approximately 50 percent. If we were to look at no fast-paced type work, I think that we would be looking at another 30 percent reduction in the numbers." (Tr. 79.) The vocational expert also testified that he relied upon the DOT, Selected Characteristics of Jobs, and Department of Labor publications in arriving at and expressing his opinions. He stated that the jobs he cited in his testimony are consistent with the terms and descriptions in the DOT. (Tr. 81.)

The plaintiff argues that the Selected Characteristics of Occupations states that all of the jobs identified by the vocational expert require frequent or constant handling and reaching, which is inconsistent with the limitations included in Acevedo's residual functional capacity. (See Pl.'s Br. at 22-23, ECF No. 12 at 26-27.) The Commissioner argues that the vocational expert's testimony that he had "initially reduced the numbers I indicated by approximately 50 percent" indicates that he reduced the available jobs based on the limitations of Acevedo's upper extremities and that this conclusion is further supported by the vocational expert's statement that his testimony was consistent with the applicable occupational information. Further, the Commissioner points out that SSR 00-4p observes that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."

Upon thorough review of the parties' arguments, the record, and the applicable law, the court is constrained to recommend that this matter be remanded to comply with the requirements of SSR 00-4p. There is a conflict between the occupational evidence provided by the vocational expert and the applicable occupational sources, and the record does not contain any explanation for the conflict or an explanation for resolution of that conflict. Cf. Overman v. Astrue, 546 F.3d 456, 464-465 (7th Cir. 2008) (rejecting the Commissioner's argument that an ALJ may rely on a vocational expert's conflicting testimony because that testimony may be given precedence over the DOT and "implicit suggestion that the [vocational expert] had some hidden knowledge that would explain away the conflicts" as frivolous where the vocational expert stated that his testimony was consistent with the DOT); Leonard v. Astrue, 487 F. Supp. 2d 1333, 1340 (M.D. Fla. 2007) (recognizing that while the vocational expert could have relied on her own experience and observations where her testimony was in apparent conflict with the DOT, remand was warranted where the ALJ failed to acknowledge the conflict and such a conclusion was speculative based on the record). Accordingly, further development of the record is required before the ALJ's finding at Step Five can be affirmed.

**B.    Remaining Issues**

In light of the court's recommendation that this matter be remanded for further consideration, the court need not address the plaintiff's remaining credibility issue, as it may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, the plaintiff may present her arguments on remand that the ALJ erred in evaluating and weighing the opinions of Dr. Godenick and Debbie Milling and in assessing Acevedo's credibility.

**RECOMMENDATION**

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner as discussed above.

November 25, 2013
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).