IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Amanda Acevedo, *on behalf of* *Nilo Richard Acevedo*, ) ) ) Plaintiff, ) ) v. ) ) Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) ) Defendant. ) _____) | | C/A No. 0:12-2137-TMC-PJG  **SUPPLEMENTAL REPORT AND RECOMMENDATION** |

The plaintiff, Amanda Acevedo, on behalf of the deceased claimant, Nilo Richard Acevedo ("Acevedo"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") prior to April 13, 2011. This social security matter is recommitted to the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC and the Order of the Honorable Timothy M. Cain, United States District Judge, for further consideration of Issues Two through Four as presented in the Plaintiff's Brief.[1] Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

---

[1] On January 16, 2014, Judge Cain found that remand to the Commissioner was not warranted on the first issue raised by the plaintiff, and therefore, that issue is not addressed in this Supplemental Report and Recommendation. (ECF No. 23.)



## ADMINISTRATIVE PROCEEDINGS[2]

In October 2009, Acevedo applied for DIB, alleging disability beginning August 1, 2009. Acevedo's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 13, 2011, at which Acevedo, who was represented by Paul T. McChesney, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on May 25, 2011 finding that Acevedo was not disabled prior to April 13, 2011, but became disabled on that date. (Tr. 32-44.)

Acevedo was forty-eight years old at the time of his alleged disability onset date. (Tr . 147.) He completed a general equivalency diploma ("GED") and has past relevant work experience as a robotic specialist, a warehouse manager, a machinist, and a maintenance person. (Tr. 152.) In his application, Acevedo alleged disability since August 1, 2009 due to a sciatic nerve, ruptured disc, hepatitis C, and problems with his right hand. (Tr. 151.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).
   * * *
3. Since the alleged onset date of disability, August 1, 2009, the claimant has had the following severe impairments: degenerative disc disease, lumbar spine, with radiculopathy and chronic low back pain; degenerative joint disease, right hand, with loss of extension in the right thumb and loss of range of motion in right wrist; hypertension; hepatitis C; status-post rotator cuff repair, left shoulder, with pain; status-post ulnar nerve surgery, left elbow; depression; and anxiety (20 CFR 404.1520(c)).
   * * *

---

[2] The discussions of the administrative proceedings, social security disability, and the standard of review were included in the court's November 25, 2013 Report and Recommendation and for ease of reference are reproduced in this supplement.

4.  Since the alleged onset date of disability, August 1, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).

    \* \* \*

5.  . . . [S]ince August 1, 2009, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, I find the claimant is right hand dominant and is able to: lift up to ten pounds occasionally; lift or carry less than 10 lbs frequently [e.g., file folders, ledgers, small tools]. I find he can stand or walk for two hours out of an eight-hour workday and he can sit for six hours out of an eight-hour workday. He can operate push/pull controls [use of upper extremities] occasional right, frequent left, with occasional overhead push/pull bilaterally; operate foot controls [lower extremities], frequent bilaterally; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; frequently balance; occasionally stoop, kneel, crawl; never crouch; overhead reach, occasionally bilaterally; handling objects [gross manipulation] frequent left, occasional right; fingering [fine manipulation]—items no smaller than paper clip—frequent left, occasional right; avoid even moderate exposure to extreme cold, excessive vibration, hazards [e.g., use of moving machinery, exposure to unprotected heights.] Further, I find the claimant is limited to a low stress job, defined as requiring only occasional decision-making with no fast-paced production work or fast-pace work. He is also limited to work involving the performance of simple, routine, and repetitive tasks and to only occasional interaction with the public.

    \* \* \*

6.  Since August 1, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

    \* \* \*

7.  Prior to the established disability onset date, the claimant was a younger individual age 45-49. Applying the age categories non-mechanically, and considering the additional adversities in this case, on April 13, 2011, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563).

    \* \* \*

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Prior to April 13, 2011, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on April 13, 2011, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).



10. Prior to April 13, 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. Beginning on April 13, 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

12. The claimant was not disabled prior to April 13, 2011, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

(Tr. 34-44.) Acevedo submitted additional evidence to the Appeals Council, which denied his request for review on June 1, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

PJG

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[3]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

---

[3] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

The following issues are before the court for this judicial review:

Issue II     Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight. The ALJ improperly gave little weight to portions of Dr. Godenick's opinions which supported a finding of disability. Where the ALJ improperly disregards the opinions of a treating physician, can his decision be supported by substantial evidence?

Issue III    Opinion evidence. The ALJ is required to evaluate all relevant medical evidence, including opinions from "other" medical sources. Here, the ALJ failed to properly evaluate the opinion of treating source, Debbie Milling, LMSW. This opinion supports a finding of disability. Where the ALJ improperly discounts a medical opinion, can his decision be supported by substantial evidence?

Issue IV     Credibility. In assessing a claimant's credibility the ALJ's decision must contain specific reasons for his finding, supported by the evidence in the case record. When the ALJ fails to provide specific reasons for his credibility determination, can his decision be based on substantial evidence?

(Pl.'s Br., ECF No. 12.)

## DISCUSSION

A.     Dr. Constance Godenick

The plaintiff first argues that the ALJ erred in evaluating two opinions from Acevedo's treating family physician, Dr. Godenick. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

In support of the plaintiff's position, she points to a mental assessment form completed by Dr. Godenick on July 28, 2010. In this assessment, Dr. Godenick indicated that Acevedo (1) could follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, and maintain personal appearance for ninety percent of an eight-hour day;

(2) could deal with ordinary work stresses and maintain attention and concentration for sixty percent of an eight-hour day; (3) could understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability for eighty percent of an eight-hour work day; and (4) could understand, remember and carry out detailed but not complex and simple job instructions one hundred percent of an eight-hour work day.  (Tr. 346-47.)  Dr. Godenick stated that Acevedo's "[a]ttention would be diverted by ongoing pain" and that stress was also affected by ongoing chronic pain.  (Tr. 346.)  Dr. Godenick also stated that Acevedo's main limitation is the effect the pain would have.  Dr. Godenick indicated that Acevedo would be capable of managing his own benefits and that the earliest date of the onset of these limitations is June 2009.  (Tr. 347.)  The plaintiff also points out that on March 22, 2011, Dr. Godenick signed a statement that indicated the following:

> I have treated Nilo Acevedo as his primary care physician for almost one year. Mr. Acevedo suffers from arthritis in his hands that is obvious on visual examination. For this reason I have not felt it necessary to perform imaging on his hands because it would not have affected my treatment of him.  Mr. Acevedo has an obvious deformity of the tendon at the base of his right thumb.  I performed grip strength testing in my office that showed he has weakness in his right hand.  He also exhibits some chronic inflammation of most of his finger joints in both hands.  Based on the appearance of his hands and clinical examination, it is most probable that Mr. Acevedo would be limited to lifting no more than 10 lbs. occasionally.  He would not be able to use his dominant right hand more than occasionally during the work day for either fine or gross manipulation.
> 
> Mr. Acevedo also suffers from chronic low back pain and left leg pain that is consistent with having a herniated disc in his lumbar spine.  For this reason, I have not felt that repeat imaging was necessary because his left leg atrophy is obvious on visual examination.  However, an MRI from 2009 shows that he has a herniated disc that is putting pressure on the left S1 nerve root, and this is consistent with his complaints of severe low back pain and pain in his left leg.  Due to his left leg atrophy and resulting weakness, Mr. Acevedo would be limited to no more than sedentary work with sedentary work defined as being able to stand or walk in combination no more than 2 hours total out of an 8 hour work day.  However, Mr. Acevedo's low back pain would cause him pain in either a seated or a standing position that would cause him interruptions to his concentration sufficient to

> frequently interrupt tasks throughout the work day. Mr. Acevedo also suffers from depression and anxiety that would contribute to this problem. When I see him in the office, it is clear that he is enormously frustrated with his situation. His speech was at times pressured and tangential, and these symptoms were significant enough that I did refer him to counseling.
>
> Mr. Acevedo suffers from Hepatitis C, and this condition can cause fatigue and some abdominal cramping. Recent blood levels have shown that his viral lode is getting worse. Fatigue and abdominal cramping from Hepatitis C could also interfere with his concentration. Mr. Acevedo would have suffered from the limitations I describe since at least the time of his June 2009 MRI of his lumbar spine and probably before that.

(Tr. 390.)

The ALJ gave Dr. Godenick's opinion regarding Acevedo's exertional limitations significant weight, observing that Dr. Godenick limited Acevedo to "no more than sedentary work and, specifically, to lifting no more than ten pounds occasionally and would not be able to use his dominant right hand more than occasionally during the workday for either fine or gross manipulation." (Tr. 41.) The ALJ also observed that that portion of Dr. Godenick's opinion "demonstrates familiarity with Social Security terms and definitions" and "it is supported by other medical evidence of record, including Dr. Korn's examination" of Acevedo. (Id.) However, the ALJ gave Dr. Godenick's opinion regarding Acevedo's non-exertional limitations "little weight as it appears that in making her opinion she relied on the claimant's subjective reports of pain, fatigue, anxiety, and depression." (Id.) The ALJ also noted that Dr. Godenick's opinion "seems to rest, at least in part, on an assessment of the claimant's anxiety and depression, which are outside her areas of expertise." (Id.)

The plaintiff challenges the reasons offered by the ALJ in discounting Dr. Godenick's opinion of Acevedo's non-exertional impairments. Specifically, the plaintiff argues that Dr. Godenick's opinions were based on objective evidence because he observed that Acevedo's speech

was at times pressured and tangential and he signed off on psychological evaluations by Debbie Milling, LMSW. Acevedo also argues that although Dr. Godenick is not a psychiatrist, she is licensed to practice medicine which includes psychiatry. The court has carefully considered these arguments, the ALJ's decision, and the record, and finds that the plaintiff has not shown that the ALJ erred in discounting a portion of Dr. Godenick's opinion or that the ALJ's decision to do so is unsupported by substantial evidence. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence); see also 20 C.F.R. § 404.1527(c) (including whether the opinion is supported by medical evidence, particularly medical signs and laboratory findings, and consist with the record as a whole, as well as whether the doctor is a specialist in the factors to be considered in weighing medical opinions); Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations.").

**B.    Debbie Milling, LMSW**

The plaintiff also argues that the ALJ erred in his assessment of Milling's opinion issued on November 16, 2010. Licensed social workers are considered "medical sources who are not acceptable medical sources." See SSR 06-03p; see also 20 C.F.R. § 404.1513(d). The social security regulations distinguish between opinions from "acceptable medical sources" and "other

sources." See 20 C.F.R. § 404.1513(d). Social Security Ruling 06-03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06-03p. However, medical sources who are not acceptable medical sources may provide opinions reflecting "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, and what the individual can still do despite the impairment(s), and physical or mental restrictions." SSR 06-03p. Social Security Ruling 06-03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision . . . .

Finally, the ALJs are instructed to apply the factors for evaluating the opinions of acceptable medical sources, which are listed in 20 C.F.R. § 404.1527(c), in evaluating the opinions from other sources with the understanding that not every factor may apply. These factors are the same factors that an ALJ is instructed to apply in evaluating opinions from medical sources and as discussed above include: (1) whether the physician has examined the claimant, (2) the treatment relationship between the physician and the claimant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) other factors that may support or contradict the opinion. See 20 C.F.R. § 404.1527(c).



The plaintiff argues that the ALJ erred in evaluating Milling's opinion. Milling completed the same mental assessment form that Dr. Godenick completed in which she circled that Acevedo (1) could follow work rules; relate to co-workers; and understand, remember and carry out simple job instructions for fifty percent of an eight-hour work day; (2) could deal with the public; use judgment; interact with supervisors; behave in an emotionally stable manner; and could understand, remember and carry out detailed but not complex job instructions for thirty percent of an eight-hour work day; (3) could function independently and demonstrate reliability for forty percent of an eight-hour work day; (4) could deal with ordinary work stresses and maintain attention and concentration for ten percent of an eight-hour work day; (4) could maintain personal appearance one hundred percent of an eight-hour work day; and (5) could relate predictably in social situations for twenty percent of an eight-hour work day. Milling also stated that Acevedo would be capable of managing his own benefits. However, Milling did not explain any of the limitations or provide any medical or clinical findings to support the assessment in this form; nor did she indicate the earliest date on which she believes the assessed limitations have existed. (Tr. 362-63.)

In discussing this opinion, the ALJ found the following:

> Ms. Milling has made a judgment about the nature and severity of the claimant's impairments, including what she feels the claimant is capable of mentally in a work setting. In essence, she has attempted to provide a medical opinion. However, because she is an "other source," and not an "acceptable medical source" as defined above, her judgments do not qualify as a "medical opinion." 20 CFR 404.1527(a)(2). Still, SSR 06-03p states that opinions from these other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file. Therefore, while I may evaluate her opinion, since it is not a medical opinion I will not assign it any weight. In evaluating Ms. Milling's opinion, I note that she failed to include a basis for any

of the limitations she found.  As such, her opinion lacks objective findings to substantiate it and is not helpful to me when evaluating the claimant's mental abilities.

(Tr. 40-41.)

The plaintiff similarly attempts to attack each of the reasons offered by the ALJ in weighing this opinion, arguing that Milling's records indicating tangential speech and difficulty in focusing support the opinion; that she was the primary treating source; and that she was monitored by Dr. Godenick.  Upon review of the parties' arguments, ALJ's opinion, the record, and the controlling law, the court finds that the ALJ appears to have applied the requisite factors.  See, e.g., SSR 06-03p (indicating that only acceptable medical sources can establish the existence of a medically determinable impairment, *give medical opinions*, and be considered treating sources whose opinions may be entitled to controlling weight). Accordingly, the court cannot say that the ALJ erred in his assessment of Milling's opinion.  See SSR 06-03p; 20 C.F.R. § 404.1527(c).

**C.     Credibility**

Finally, the plaintiff argues that the ALJ erred in evaluating Acevedo's subjective complaints. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  It appears that in this matter only the second step is at issue,[4] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work."  Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding

---

[4] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

Page 13 of  18



on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

> The ALJ found that
>
>> [t]he claimant's description of his disabling symptoms and limitations are not fully corroborated by the medical evidence of record. Records from New Horizons show the claimant only averages approximately one appointment a month, if that. (Exhibits 7F and 19F). Also, his condition is apparently well-managed as it has not required any visits to the hospital/emergency room since June 2009. (Exhibit 21F). Furthermore, on his Function Report, the claimant admitted to activities of daily living which are inconsistent with his allegations of disabling symptoms and limitations. He reported he needs no help with his personal care needs. He is able to remember to take his medication on his own. Also, he admitted that he can prepare simple meals, do laundry and some household repairs, drive, and go shopping for groceries. (Exhibit 5E).

(Tr. 38-39.) Additionally, the ALJ found that Acevedo was entitled to some credibility based on his diagnoses of degenerative disc disease with radiculopathy, degenerative joint disease of the right hand, hypertension, hepatitis C, left shoulder impairment, and left elbow impairment and limited Acevedo to sedentary work with additional postural and environmental limitations. Later in the opinion, the ALJ also specifically accounted for Acevedo's testimony "that his anxiety and depression cause him to have trouble sleeping and make him feel 'shut down.' " (Tr. 40.) The ALJ observed that

> [t]reatment notes from his counselor, Ms. Milling, show that the claimant has difficulty focusing. (Exhibit 19F). As such, I have limited the claimant to work involving the performance of simple, routine, and repetitive tasks. I have done so even though Ms. Milling noted the claimant's thought process was goal-directed and relevant and his long term and immediate memory were good. (Exhibit 17F). On his Function Report, the claimant stated that he is stressed on a daily basis because of his impairments and that his mood gets down because he cannot do physical things he used to be able to do. He indicated that he does not spend time with anyone else other than his children. However, he did report that he gets along very well with authority figures and has never been fired from a job because of problems getting along with other people. (Exhibit 5E). Still, I have limited him to only occasional interaction with the public.

(Tr. 40.)



The plaintiff argues that the ALJ failed to consider the effects of Acevedo's medication[5] or the consistency of his allegations of pain, and disputes that the reasons offered by the ALJ do not show that Acevedo is not credible. However, the plaintiff fails to acknowledge that the ALJ did partially credit Acevedo's allegations as discussed above by limiting his interaction with the public and providing postural and environmental limitations. Moreover, although the plaintiff challenges the relevance and/or the propriety of the reasons offered by the ALJ to discount Acevedo's other allegations, the plaintiff has failed to demonstrate and the court cannot say that the ALJ's reasons were improper or that the ALJ's credibility analysis was not supported by substantial evidence. See 20 C.F.R. § 404.1529(c)(3) (discussing the factors in evaluating subjective complaints); Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence); see also Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints); Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly

---

[5] The court notes that the hearing transcript does not appear to reflect any testimony regarding the alleged effects of Acevedo's pain medications.



consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

## RECOMMENDATION

For the foregoing reasons, the court finds that the plaintiff has not shown based on Issues Two through Four that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  Therefore, based on the remaining issues before the court, the court recommends that the Commissioner's decision be affirmed.

January 27, 2014                                Paige J. Gossett
Columbia, South Carolina                 UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).